# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JACK LEMKIN,**

    **Plaintiff,**

                            **CASE NO.: 2:10-CV-665**
                            **JUDGE GEORGE C. SMITH**

    **v.**                            **MAGISTRATE JUDGE ABEL**

**HAHN, LOESER & PARKS,** *et al.,*

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants Craig Miller and Mark Watkins' Motion for Summary Judgment (Doc. 74) and Defendants' Motion to Strike Plaintiff's Exhibits to his Response to the Motion for Summary Judgment (Doc. 77). Responses and replies have been filed and these motions are now ripe for review. For the reasons that follow, Defendants' Motion to Strike is **GRANTED in part and DENIED in part** and Defendants' Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND

Plaintiff Jack Lemkin initiated this case against Defendants Hahn, Loeser & Parks ("HLP")[1], Craig Miller, and Mark Watkins for negligent misrepresentation, fraud, and gross and willful misconduct. (Am. Compl., Doc. 22). Plaintiff claims that Defendants misrepresented his contribution to an invention for which patents were issued, and, as a result, Plaintiff has suffered losses.

---

[1] Defendant HLP was dismissed from this action on June 28, 2011 (see Doc. 62).

Defendants Miller and Watkins were attorneys at the law firm of Oldham & Oldham Co., LPA, that specialized in intellectual property matters. Defendant Miller is currently employed as an engineer and no longer practices law. Defendant Watkins is currently a partner with the law firm of Hahn Loeser & Parks LLP.

Defendants Miller and Watkins represented OurPet's, a company that designs, develops, and markets pet health and wellness products. Dr. Tsengas is the Chief Executive Officer and President of OurPet's. Miller and Watkins represented OurPet's on a variety of intellectual property matters, including patent issues relating to one of its products, the Store-N-Feed[2].

Plaintiff Lemkin is a plastics manufacturing consultant. OurPet's used Lemkin's consulting services, via Lemkin's company Sinitron, to assist in reducing various product concepts OurPet's personnel designed. Plaintiff was never a client of Defendants Miller and Watkins and therefore never had an attorney-client relationship with them.

In early 1999, Dr. Tsengas designed a prototype of the Store-N-Feed. Around this same time, Dr. Tsengas hired Lemkin to perform drafting services in connection with the Store-N-Feed. Lemkin admits that he performed drafting services in connection with the Store-N-Feed, but also claims that it was he who actually designed the Store-N-Feed. (Lemkin Depo. I at 131-34, 145, 212).

Shortly after designing the prototype of the Store-N-Feed, Dr. Tsengas and OurPet's retained the services of Oldham & Oldham to assist them in obtaining the patent rights on the

---

[2] Plaintiff requests the Court to strike "those parts of the Motion for Summary Judgment that include the deceptive term "Store-N-Feed", since the use of this false term is prejudicial to the Plaintiff." (Pl.'s Response at 3). Plaintiff asserts that there are two separate products, the product in the provisional patent application and the "Store-N-Feed." The Court acknowledges that there were some changes to the final product that differ from the provisional patent application, but the end result is essentially the same. Further, this is not an action challenging the validity of the patent and therefore any differences between the original and final designs of the Store-N-Feed are irrelevant. Accordingly, Plaintiff's Motion to Strike is denied.

2

Store-N-Feed.  On April 8, 1999, Defendant Miller filed a provisional application for a patent[3] for an adjustable-height pet feeder, the Store-N-Feed, with the U.S. Patent and Trademark Office.  The patent application identified Dr. Tsengas as the inventor of the Store-N-Feed.  Plaintiff maintains that he authored seven of the eight drawings that were submitted with the provisional patent application.  However, Plaintiff never had any communications with Miller or Watkins prior to the filing of the provisional patent application.  (Lemkin Depo. II at 41).

In February of 2000, approximately 10 months after the provisional patent application was filed, Plaintiff began sending letters to Dr. Tsengas stating that he should be named as an inventor on the patent application for the Store-N-Feed.  (Lemkin Depo. II, Exhs. I and Q).  At the request of his clients, Defendant Miller responded to these letters informing Plaintiff that, given his contributions in connection with his drafting services, he was not considered an inventor of the Store-N-Feed and would not be named as such.  (*Id.*, Ex. F).

Plaintiff Lemkin then took steps to obtain a patent on the Store-N-Feed in his name via his attorney, Martin Hoffman of Arlington, Virginia.  On May 24, 2000, Plaintiff filed a standard patent application for the Store-N-Feed identifying himself as the inventor.  (Lemkin Depo. I at 92, Exh. P).  Plaintiff continued to send letters to Dr. Tsengas and OurPet's attempting to obtain licensing rights to the Store-N-Feed.  (*Id.*, Exhs. R and S).

In December 2000, the partners at Oldham & Oldham learned that Defendant Miller had neglected work on numerous files, including the Store-N-Feed project.  Miller failed to timely convert the provisional application for a patent to a standard patent application.  (Watkins Decl.

---

[3] A provisional patent application is less costly than a standard patent application and will not mature into an issued utility patent unless further steps are taken.  It serves to establish an early effective filing date for priority in connection with a later filed non-provisional patent application.  A provisional application for a patent is automatically abandoned one year after the date on which it is filed.  *See* generally 35 U.S.C. § 111, *et seq*.

3

¶ 7). Miller's failure to file the patent application allowed Plaintiff's patent application to be processed favorably and on November 14, 2000, the USPTO issued Patent Number 6,145,474 (the "474 patent") in Lemkin's name for the Store-N-Feed. (Lemking Depo. II, Exh. P). A series of lawsuits in both state and federal court ensued. As a result of his conduct, Miller was terminated from Oldham & Oldham.

Dr. Tsengas and OurPet's sued Oldham & Oldham, Miller, and Watkins for legal malpractice in connection with Miller's failure to convert the provisional application for a patent into a standard patent application. *See OurPet's Company, et al. v. Oldham & Oldham Co., L.P.A., et al.*, Case No. CV-2001-01-0278, originally filed in the Summit County Court of Common Pleas, Ohio, and later dismissed and re-filed as *OurPet's Company, et al. v. Oldham & Oldham Co., L.P.A., et al.*, Case No. CV-02-472413, in the Cuyahoga County Court of Common Pleas. Dr. Tsengas and OurPet's also sued Lemkin in state court to resolve various commercial interests between themselves and Lemkin. *See OurPet's v. Jack Lemkin, et al.*, Case No. CV-00-413368, in the Cuyahoga County Court of Common Pleas. Dr. Tsengas and OurPet's then sued Lemkin in the United States District Court for the Northern District of Ohio, seeking to invalidate the 474 patent that Lemkin had obtained in his name ("the Federal Action"). *See OurPet's Company, et al. v. Jack Lemkin, et al.*, Case No., 1-02-0166-KMO, in the United States District Court for the Northern District of Ohio.

In the Federal Action, OurPet's sought a temporary restraining order and preliminary injunction against Lemkin to prohibit him from: (1) asserting any rights under the 474 patent; (2) claiming that he was the true inventor of the 474 patent; and (3) contacting any third-parties with respect to the 474 patent. The court held an initial hearing and ultimately entered a temporary restraining order against Lemkin. Later, a preliminary injunction hearing was held and the court

4

found that Dr. Tsengas and OurPet's likely would succeed on the merits in showing that the 474 patent was invalid because Lemkin was not the sole inventor or co-inventor of the Store-N-Feed.

On October 29, 2004, Lemkin entered into a Settlement Agreement and Mutual Release with Dr. Tsengas and OurPet's whereby the parties agreed to settle all of their claims against each other, including the claims relating to the 474 patent and the Store-N-Feed. Pursuant to the Settlement Agreement, Lemkin assigned the 474 patent to OurPet's, in exchange for a payment of $50,000. Lemkin specifically released OurPet's, Dr. Tsengas, and their agents from all claims, damages, and liability arising out of the parties' relationship. The only agent Lemkin reserved the right to sue was Oldham & Oldham. Lemkin did not specifically reserve the right to sue Miller and Watkins personally.

On February 28, 2005, Plaintiff filed suit against Hahn Loeser & Parks LLP, Miller and Watkins in the Franklin County Court of Common Pleas, Case No. 05CVC-0202256. On October 15, 2009, that case was dismissed for lack of subject matter jurisdiction because Plaintiff's claims involved patents. Then, on July 27, 2010, Lemkin initiated the instant action. Despite specifically reserving the right, Plaintiff has not sued Oldham & Oldham.

## II.  STANDARD OF REVIEW

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587.  The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-53. Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978).  The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (*quoting Liberty Lobby*, 477 U.S. at 257).  The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the

opposing party. *Liberty Lobby*, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III. DISCUSSION

Defendants Craig Miller and Mark Watkins have moved for summary judgment on Plaintiff's claims of negligent misrepresentation, fraud, and gross and willful misconduct. The Court will address the merits of each of these claims in turn. But, first the Court will address the preliminary matter of Defendants' Motion to Strike.

#### A. Motion to Strike

Defendants move to strike, pursuant to Rule 56(c)(2) and (e) of the Federal Rules of Civil Procedure, Plaintiff's Exhibits 1, 2, 4, 5, 6, 7, 8, 9, 10, and 11 of his Response to Defendants' Motion for Summary Judgment. Defendants assert that the exhibits consist of unauthenticated documents, uncertified excerpts of deposition transcripts from another case involving different claims, and a self-serving, conclusory declaration of Lemkin. Defendants are correct in asserting that unauthenticated documents cannot be considered when deciding a motion for summary

7

judgment. *Michigan Paytel Joint Venture v. City of Detroit,* 287 F.3d 527, 532 n. 5 (6th Cir. 2002); *see also Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993) ("This court has ruled that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded."). Additionally, uncertified excerpts from a deposition transcript that have not been filed with the Court are inadmissible and cannot be considered on a motion for summary judgment. *See Harris v. City of St. Clairsville, Ohio*, 330 Fed. Appx. 69, 71-72 (6th Cir. 2008). Further, a declaration used to oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Exhibits 1 and 7 were excerpts from the transcript of the deposition of Defendant Craig Miller on July 18, 2001, in the case of *OurPet's Company, et al. v. Oldham & Oldham Col, et al.*, Case No. CV-2001-01-0278, in the Court of Common Pleas, Summit County, Ohio. Exhibits 2, 5, and 6 were marked for identification during the aforementioned deposition. This was a legal malpractice action and Plaintiff was not a party to this lawsuit. Defendants argue because Plaintiff has failed to file a certified copy of the transcript with the Court, the excerpts and the exhibits from the deposition are not certified and therefore inadmissible. The Court acknowledges that Plaintiff is a *pro se* litigator and courts have long construed the pleadings of *pro se* litigants liberally, holding them "to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, Plaintiff cannot be excused from compliance with the Federal Rules of Evidence because he is acting *pro se*. Additionally, several of these exhibits are incomplete, and therefore cannot be considered. The Court must therefore strike exhibits 1, 2, 5, 6, and 7 as these exhibits fail to qualify as proper summary

8

judgment evidence under Rule 56. *See Harris*, 330 Fed. Appx at 71-72 (affirming refusal to consider uncertified depositions in summary judgment analysis).

Additionally, Defendants argue that Exhibits 8, 9 and 10 must be stricken because they have not been authenticated and Plaintiff has no personal knowledge of the documents. Exhibit 8 is a February 16, 1999 memorandum from Scott Oldham and Mark Watkins to Miller that has not been authenticated and is irrelevant because it predates any of the activities upon which Plaintiff bases his claims. Exhibit 9 is the wage/salary history for Miller that has not been authenticated by anyone with Oldham & Oldham. Exhibit 10 is a December 18, 2000 memorandum from Watkins to Miller that Watkins did not testify about. Plaintiff, however, argues that Exhibits 8, 9, and 10 were produced by Defendants during discovery and are therefore authentic per se. Again, the Court agrees with Defendants and will strike Plaintiff's exhibits 8, 9 and 10 as they have not been properly authenticated. Further, Plaintiff lacks any personal knowledge of the exhibits or the material contained therein.

Finally, Defendants move to strike Exhibit 11, Plaintiff's own declaration. Defendants assert that it is conclusory and self-serving. The Court agrees that it is conclusory, but because Plaintiff is acting *pro se*, will allow his declaration. However, it will be given the weight it deserves in light of the other evidence presented in this case.

### B. Motion for Summary Judgment
#### 1. Negligent Misrepresentation

Plaintiff Lemkin alleges that Defendant Miller made the following negligent misrepresentations: (1) Miller misrepresented to the USPTO in the provisional patent

9

application that Dr. Tsengas was the author of the drawings shown therein; (2) Miller misrepresented to Dr. Tsengas that his sketch of the Store-N-Feed was a patentable invention; (3) Miller misrepresented in a February 29, 2000 letter to Lemkin, in response to letters written by Lemkin, that in Miller's opinion, Lemkin should not be named as an inventor of the Store-N-Feed; (4) Miller misrepresented in a September 8, 2000 letter to Lemkin, in response to a letter written by Lemkin, that Dr. Tsengas was unable to talk to Lemkin and that Miller would respond to Lemkin's letter in two weeks; and (5) Miller misrepresented in an October 6, 2000 letter to Lemkin, in response to Lemkin's letter, that OurPet's/Dr. Tsengas would consider Lemkin's proposal and get back to him.

To maintain a claim for negligent misrepresentation, Plaintiff must demonstrate that Defendants "in the course of [their] business, profession or employment, or in any other transaction in which [they had] a pecuniary interest, supplie[d] false information for the guidance of others in their business transactions," did so without exercising "reasonable care or competence in obtaining or communicating the information," that Plaintiff justifiably relied on that information, and that "pecuniary loss" resulted from that reliance. *Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 4 (1989).

It is well settled that "an attorney is immune from liability to third parties arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously. *Scholler v. Scholler*, 10 Ohio St.3d 98, 98 (1984). As a preliminary matter, Plaintiff was not in privity with OurPet's and Dr. Tsengas, therefore, he cannot, as a matter of law, maintain negligent misrepresentations claims against Miller and Watkins.

10

Further, to be actionable, a misrepresentation generally must relate to an existing or pre-existing fact which is susceptible of knowledge. *Ohio Police & Fire Pension Fund v. Standard & Poor's Financial Services, LLC*, 2011 U.S. Dist. LEXIS 109912, *30 (S.D. Ohio 2011) (Graham, J.). Thus, statements of opinion are generally not actionable. *Id*. at *31. Statements of opinion are actionable only "if the speaker does not believe the opinion and the opinion is not factually well-grounded." *In re Ford Motor Co. Securities Litig.*, 381 F.3d 563, 572 (6th Cir. 2004).

The first two claims of negligent misrepresentation involve Defendant Miller allegedly misrepresenting information to the USPTO and to Dr. Tsengas. However, Plaintiff does not allege that this information was provided to him by Miller. Further, Plaintiff has failed to establish that any of this information provided was false. Plaintiff even admits that he did not rely on any of the alleged information, nor did he take any action in response to it. Plaintiff merely disagrees with the legal advice that Miller has provided to Dr. Tsengas. Plaintiff, therefore, cannot maintain a claim for negligent misrepresentation on these two allegations.

The final three claims for negligent misrepresentation involve letters written by Miller to Plaintiff, in response to letters written by Plaintiff to Dr. Tsengas/OurPet's. Defendant Miller was acting as counsel for Dr. Tsengas and OurPet's when he responded to Plaintiff's letters. He was advocating the position of his clients when he wrote that Lemkin was not the inventor of the Store-N-Feed. In each of the letters, Miller did not provide Plaintiff any information to guide him in his business transactions. Further, there is no evidence that Lemkin relied on these alleged misrepresentations, nor did he take any actions in response to them that caused him any harm. In fact, the opposite occurred. Plaintiff's lack of reliance on Miller's opinions is demonstrated by the fact that he applied for and obtained the 474 patent naming himself as the

inventor of the Store-N-Feed. Further, simply because Plaintiff disagrees with the contents of the letters he received from Miller does not constitute negligent misrepresentation. Therefore, Defendants are entitled to summary judgment on Plaintiff's claims for negligent misrepresentation.

### 2.    Fraud

Plaintiff Lemkin alleges three instances of fraud against Defendants: (1) that Miller misrepresented to the USPTO in the provisional patent application that Dr. Tsengas was the author of the concepts shown in the drawings in the application; (2) that Miller failed to cite the Teshke patent in the provisional application for patent; and (3) that Miller created a fraudulent document, the provisional patent application.

Plaintiff must present evidence supporting each of the following elements to maintain a fraud claim:

> (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55 (1987). In *Moses v. Sterling Commerce America, Inc.*, "[t]he Ohio Supreme Court has held that a party cannot maintain an action for fraud when the fraudulent representations were not made to him to induce him to act." 2002 Ohio App. LEXIS 4347 (Ohio Ct. App. 2002).

Defendants argue, and the Court agrees, that Plaintiff's fraud claims fail because all of the alleged misrepresentations were purportedly made to the USPTO via the provisional application for patent and none were made to Plaintiff. *See Whittle v. Proctor & Gamble,* 2007 U.S. Dist. LEXIS 87216, *19 (S.D. Ohio 2007) (Holschuh, J.) (dismissing fraud claim because

12

alleged fraudulent misrepresentations were made to USPTO). Additionally, Plaintiff has failed to present sufficient evidence to establish each of the elements of a fraud claim. Specifically, he has failed to allege that the misrepresentations were intentional or that anyone, including Plaintiff himself, relied upon them. Accordingly, Defendants are entitled to summary judgment on Plaintiff's fraud claims.

### 3. Gross and Willful Misconduct

Defendants assert that while it is not clear what claim Plaintiff is attempting to raise in Count Three of his Complaint, it appears to be based on the same actions of Defendants Miller and Watkins that form the basis of his fraud and negligent misrepresentation claims. Plaintiff responds by attempting to define gross and willful misconduct and arguing that "Defendants did not exercise care. . . .Defendants were aware that Miller's reckless behavior could result in the likelihood of resulting injury. They took no action to correct his misconduct and failed to exercise care." (Pl.'s Response at 10-11).

This Court has recognized that the term "gross misconduct" is not statutorily defined, and courts have not come to a universal definition of the term. *Berry v. Frank's Auto Body Carstar, Inc.*, 2011 U.S. Dist. LEXIS 106069, 21-22 (S.D. Ohio Sept. 19, 2011) (*citing Zickafoose v. UB Services, Inc.*, 23 F.Supp.2d 652, 655 (S.D.W.Va. 1998) ("No uniform definition of gross misconduct exists.")). Courts have generally defined gross misconduct as conduct "so outrageous that it shocks the conscience[,]" *id.*, or as "misconduct that is 'intentional, wanton, willful, deliberate, reckless or in deliberate indifference to an employer's interest.'" *Nero v. University Hospitals Management Services Org.*, 2006 U.S. Dist. LEXIS 76546 (N.D. Ohio Oct. 12, 2006) (quoting *Collins v. Aggreko, Inc.*, 884 F.Supp. 450, 454 (D. Utah 1995)). Mere

negligence, incompetence or inadvertent misbehavior does not constitute gross misconduct. *Moore v. Williams College*, 702 F.Supp.2d 19, 24 (D. Mass. 2010).

Willful misconduct "involves an intent, purpose or design to injure." *McKinney v. Hartz & Restle Realtors, Inc.*, 31 Ohio St. 3d 244, 246 (1987) (quoting *Denzer v. Terpstra*, 129 Ohio St. 1 (1934)). Willful misconduct is also defined alongside wanton conduct, which occurs when one "fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is a great probability that harm will result. . .." *Id*. (quoting *Hawkins v. Ivy*, 50 Ohio St. 2d 114 (1977)).

Plaintiff's general allegation that Defendants failed to exercise care is not sufficient to maintain an actionable claim for gross and/or willful misconduct. There is no question that Miller mishandled legal matters for his clients Dr. Tsengas and OurPet's. Plaintiff, however, was never a client of Miller or Watkins, nor was he in privity with Dr. Tsengas and OurPet's. Accordingly, for this reason and those reasons set forth with respect to Plaintiff's negligent representation and fraud claims, Defendants are entitled to summary judgment on Plaintiff's claim of gross and willful misconduct.

### 4. Immunity

Defendants argue that they are immune from any liability to Plaintiff arising out of their good faith representation of Dr. Tsengas and OurPet's. It is well-settled Ohio law that an attorney is immune from liability to third parties arising from his performance of services on behalf of a client, in good faith, unless the third party is in privity with the client or the attorney acts maliciously. *Scholler*, 10 Ohio St.3d at 98; *see also Simon v. Zipperstein*, 32 Ohio St.3d 74, 76 (1987); *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 228 (2008); *Wilkey v. Hull*, 598 F.Supp.2d 823, 831-32 (S.D. Ohio 2009). The Ohio Supreme Court in *Simon* reasoned that:

Some immunity from being sued by third persons must be afforded an attorney so that he may properly represent his client.  To allow indiscriminate third-party actions against attorneys of necessity would create a conflict of interest at all times, so that the attorney might well be reluctant to offer proper representation to his client in fear of some third-party action against the attorney himself.

32 Ohio St.3d at 76.

An attorney acts maliciously if he acts with the intent to defraud a third party, or with malice or bad faith.  *Wilkey*, 598 F.Supp.2d at 832.  To satisfy the fraud exception, Plaintiff must demonstrate that the attorney committed the alleged wrongful acts for his own personal gain.  *Id*.  The malice necessary to except the attorney from immunity is similar to the standard of actual malice required for punitive damages:  "(1) the state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."  *Id*. (quoting *Preston v. Murty*, 32 Ohio St.3d 334, 336 (1987)).

Defendants argue they are immune because they were attorneys for Dr. Tsengas and OurPet's, not Lemkin.  And because Lemkin was not in privity with Dr. Tsengas or OurPet's.  In fact, Lemkin had an adversarial relationship with Dr. Tsengas and OurPet's regarding the patent on the Store-N-Feed.  Defendants assert that they acted in good faith in providing legal services to Dr. Tsengas and OurPet's and that they never defrauded, or intended to defraud the USPTO or Lemkin.  Additionally, they assert that they never intended any harm to Lemkin, or did they act with malice toward him.

Plaintiff, however, argues that Defendants acted maliciously and are therefore not immune from liability.  Plaintiff asserts that Defendants deviated from a reasonable standard of care.  However, Plaintiff fails to assert how any such alleged deviation affected him.  Plaintiff's

15

repeated references to Miller's reckless behavior do not have any impact on Plaintiff. Plaintiff was not represented by Miller and nothing that Miller did has negatively impacted Plaintiff. Accordingly, the Court finds that Defendants are immune from any liability arising out of their good faith representation of Dr. Tsengas and OurPet's.

### 5. Additional Arguments

Defendants argue that Plaintiff has released them from any possible liability relating to the Store-N-Feed, the 474 patent, and their representation of Dr. Tsengas and OurPet's. Defendants also argue that Plaintiff lacks standing to sue for damages relating to the 474 patent. Finally, Defendants argue that Plaintiff is not the real party in interest to recover damages relating to the 474 patent and the Store-N-Feed, as he assigned his rights to OurPets.

Having already concluded that Defendants are entitled to summary judgment on all of Plaintiff's claims, the Court does not find it necessary to analyze Defendants' additional arguments in support of summary judgment.

**IV.   CONCLUSION**

For the foregoing reasons, Defendants' Motion to Strike is **GRANTED IN PART AND DENIED IN PART**. Additionally, Defendants' Motion for Summary Judgment is **GRANTED**. Defendants have also filed a Motion to Set a Schedule for Identification of Expert Witnesses which is now **MOOT**.

The Clerk of this Court shall remove Documents 74, 77, and 79 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*_____

**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**